UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

MELISSA ROBINSON,

    Plaintiff,

v.                                Case No:   6:14-cv-1358-Orl-TBS

CARPORT SALES & LEASING, INC. and
MARQUES ENTERPRISES, INC.,

    Defendants.

## ORDER[1]

This matter comes before the Court on Defendant's Motion to Dismiss Plaintiff's Amended Complaint. (Doc. 17). Upon due consideration, the Court will **DENY** the motion.

### Background

Plaintiff Melissa Robinson alleges that, on or about November 1, 2013, she purchased an automobile from Defendant under a Retail Instalment Sales Contract ("the Contract"), a copy being attached as "Exhibit A" to her complaint. (Doc. 7, ¶¶ 8-10; Doc. 7-1). The section of the Contract entitled "Federal Truth-in-Lending Disclosures" identifies the "Annual Percentage Rate" (24.90%), "Finance Charge" ($7,414.05), "Amount Financed" ($11,764.50), "Total of Payments" ($19,179.55), and "Total Sales Price" ($21,678.55) for her purchase. (Doc. 7-1, p. 3). Another section of the Contract, entitled "Itemization of Amount Financed," states that the amount financed includes:

---

[1] On January 8, 2015, the parties filed their Joint Case Management Report in which they consented to the exercise of jurisdiction by a United States Magistrate Judge. (Doc. 21). The following day, the presiding district judge reassigned this case to me for all further proceedings and entry of judgment pursuant to 28 U.S.C. § 636(c) and FED. R. CIV. P. 73. (Doc. 22).

$10,703.20 for "Unpaid Balance of Cash Price" (which includes sales tax); $595.00 for "Optional Gap Contract"; $41.30 for "Government Documentary Stamp Taxes"; and $425.00 for "Government License and/or Registration Fees."  (Doc. 7-1, p. 3).

When she purchased the vehicle, Plaintiff also executed a Guaranteed Asset Protection ("GAP") Waiver ("GAP Contract"), wherein she agreed to pay $595 for GAP insurance.  (Doc. 7, ¶¶ 11-12, 14; Doc. 17-1, pp. 4-6).  GAP insurance covers the difference between the applicable insurance coverage on a vehicle and the amount still owed by the consumer in the event the vehicle is totaled or stolen.  Bragg v. Bill Heard Chevrolet, Inc., 374 F.3d 1060, 1065 (11th Cir. 2004).

Both the Contract and the GAP Contract contain recitals that the GAP Contract is "optional," and Defendant insists that Plaintiff's execution of the GAP Contract was "not required" to obtain financing for the vehicle.  (Doc. 7-1, pp. 3, 4; Doc. 17, p. 6; Doc. 17-1, p. 4).  However, Plaintiff alleges that during negotiations, Defendant's salesperson "told Plaintiff that she was required to purchase GAP insurance in order for the financing for the vehicle to be approved," and Plaintiff purchased GAP insurance "based on the Defendant's representations that the same was required in order to obtain financing." (Doc. 7, ¶¶ 11, 12).

Plaintiff complains that under the Truth in Lending Act ("TILA"), 15 U.S.C. § 1605(a), Defendant was required to include the charge for GAP insurance in the finance charge, rather than in the amount financed, because the purchase of GAP insurance was "imposed directly or indirectly by [Defendant] as an incident to or a condition of the extension of credit."  (Doc. 7, ¶¶ 15, 16).  Plaintiff asserts claims under subsections (2), (3), and (4) of 15 U.S.C. § 1638(a), on the grounds that the Contract misstated the amount financed, finance charge, and annual percentage rate.  (Doc. 7, ¶¶ 20-25).

- 2 -

Legal Standard

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the plaintiff's complaint.  La Gresta v. First Union Securities, Inc., 358 F.3d 840, 845 (11th Cir. 2004). Because Rule 8(a)(2) requires the plaintiff to "show[]" that he is entitled to relief, a mere "blanket assertion[] of entitlement to relief" will not do.  Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 556 n. 3 (2007).   To survive dismissal under Rule 12(b)(6), the plaintiff must plead facts which, "accepted as true, 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).

A claim is "plausible on its face" when its factual content permits a "reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678. In evaluating a complaint under this standard, the Court must accept all well-pleaded factual allegations as true and construe them in the light most favorable to the plaintiff. Id.; Ironworkers Local Union 68 v. AstraZeneca Pharmaceuticals, LP, 634 F.3d 1352, 1359 (11th Cir. 2011).   Legal conclusions devoid of any factual support are not entitled to an assumption of truth.   Mamani v. Berzain, 654 F.3d 1148, 1153 (11th Cir. 2011) (citing Iqbal, 556 U.S. at 679).

Discussion

TILA requires creditors to make certain disclosures to consumers in consumer credit transactions that fall within the scope of the statute.   15 U.S.C. § 1638(a).   The required disclosures include: the "amount financed," which is "the amount of credit of which the consumer has actual use," 15 U.S.C. § 1638(a)(2); the "finance charge," 15 U.S.C. § 1638(a)(3); and the finance charge expressed as an "annual percentage rate," 15 U.S.C. § 1638(a)(4).   If a creditor fails to disclose the required information or

discloses erroneous information to the consumer, the consumer may sue the creditor for damages.   15 U.S.C. § 1640(a).

The parties dispute boils down to whether the $595 charge for GAP coverage was part of the finance charge, as Plaintiff argues, or part of the amount financed, as Defendant claims.   "Finance charge" is defined in 15 U.S.C. § 1605(a) as "the sum of all charges, payable directly or indirectly by the person to whom the credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit." The regulations implementing TILA provide that charges or premiums paid for debt cancellation or debt suspension coverage may be excluded from the finance charge only if the following conditions are met:

> (i) The debt cancellation or debt suspension agreement or coverage is not required by the creditor, and this fact is disclosed in writing;
>
> (ii) The fee or premium for the initial term of coverage is disclosed in writing.   If the term of coverage is less than the term of the credit transaction, the term of coverage also shall be disclosed.   The fee or premium may be disclosed on a unit-cost basis only in open-end credit transactions, closed-end credit transactions by mail or telephone under § 226.17(g), and certain closed-end credit transactions involving a debt cancellation agreement that limits the total amount of indebtedness subject to coverage;
>
> (iii) The following are disclosed, as applicable, for debt suspension coverage: That the obligation to pay loan principal and interest is only suspended, and that interest will continue to accrue during the period of suspension.
>
> (iv) The consumer signs or initials an affirmative written request for coverage after receiving the disclosures specified in this paragraph, except as provided in paragraph (d)(4) of this section.   Any consumer in the transaction may sign or initial the request.

12 C.F.R. § 226.4(d)(3).

Defendant argues, and Plaintiff does not dispute, that subparagraph (iii) does not apply because the GAP insurance charge is a debt cancellation fee, rather than a debt suspension fee.  (Doc. 17, p. 6).  It is also undisputed that subparagraphs (ii) and (iv) are satisfied here.  (Doc. 17, p. 7).  Where the parties disagree is whether or not GAP coverage was "required by the creditor."  Defendant argues that the recitals in the Contract and GAP Contract show conclusively that GAP coverage was not required. (Doc. 17, pp. 6-7).  Plaintiff argues that those recitals are not conclusive, and that her allegations that Defendant's salesperson told her she would not obtain financing unless she signed the GAP Contract, and that she relied on this statement in signing the GAP Contract, are sufficient to survive a motion to dismiss.

The Court agrees with Plaintiff for several reasons.  First, as a matter of hornbook contract law, a party in litigation is free to deny a recital of fact in an integrated agreement.  See Asphalt Paving, Inc. v. Ulery, 149 So. 2d 370, 377 (Fla. 1st DCA 1963); Restatement (Second) of Contracts § 218(1), 11 Williston on Contracts § 33.46 (4th ed.). Second, courts that have addressed the question have held that contractual recitals that insurance, debt cancellation, and debt suspension coverage are "optional" are not conclusive of whether a creditor requires coverage as a condition of extending credit. See Hager v. American General Finance, Inc., 37 F. Supp. 2d 778, 784 (S.D. W. Va. 1999); In re Milbourne, 108 B.R. 522, 541 (Bankr. E.D. Pa. 1989).  Defendant has not cited any contrary authority.  Finally, the Federal Reserve Board–the agency that, until recently, was charged with interpreting and implementing TILA[2]–has explained that a

---

[2] See Truth in Lending Act, Pub. L. No. 90-321, § 105, 82 Stat. 146, 148 (1968) (codified as amended at 15 U.S.C. § 1604).  Most of the FRB's authority to interpret and enforce TILA was transferred to the Consumer Financial Protection Bureau upon its creation in 2010 in the Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. 111-203, § 1100A, 124 Stat. 1376, 2107-09 (2010).

- 5 -

consumer's signature on a document stating that insurance is not required is not conclusive evidence that insurance is not required.  See In re Cruz, 441 B.R. 23, 33 (Bankr. E.D. Pa. 2004) (citing Federal Reserve Board Staff Letter of December 20, 1977, No. 1270, Consumer Credit Guide (CCH) ¶ 31756); see also 12 C.F.R. Part 226 Supp. I ("Whether the insurance or coverage is in fact required is a factual question").[3]  The Supreme Court instructs that the Board's interpretation of TILA and its implementing regulations is entitled to "a high degree of deference" from the federal courts.  Ford Motor Credit Co. v. Milhollin, 444 U.S. 555, 557 (1980).

Plaintiff alleges in her amended complaint that Defendant's salesperson told her she had to purchase GAP insurance in order for the financing for the vehicle to be approved.  (Doc. 7, ¶ 11).  Based on this allegation, it is "plausible" to conclude that Plaintiff had to purchase insurance in order to obtain financing, despite the recitals to the contrary in the Contract and GAP Contract.  If Plaintiff did have to purchase GAP coverage to obtain credit, then the $595 she paid for GAP coverage should have been included in the finance charge, rather than the amount financed.  If the Contract understated the finance charge and overstated the amount financed, then it necessarily also understated the annual percentage rate–all of which would violate § 1638(a) and entitle Plaintiff to relief under § 1640(a).  Thus, the allegations in Plaintiff's complaint are more than sufficient to nudge her claims "across the line from conceivable to plausible." Twombly, 550 U.S. at 570.  Defendant's motion is therefore **DENIED**.

   **IT IS SO ORDERED.**

---

[3] Plaintiff cites FRB Staff Letter No. 1270 and another FRB staff letter from 1978 in her memorandum in opposition.  While the Court has located sources that quote and discuss these letters, it has not found the letters themselves.  In the future, if counsel wishes to cite an administrative source that is not readily available electronically, counsel should attach the relevant source as an exhibit to the motion.

DONE and ORDERED in Orlando, Florida on January 15, 2015.

THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to Counsel of Record